United States Court of Appeals
Fifth Circuit

# UNITED STATES COURT OF APPEALS

**F I L E D**

June 12, 2013

## FOR THE FIFTH CIRCUIT

Lyle W. Cayce
Clerk

No. 11-51204

D.C. Docket No. 5:11-CR-409-1-XR

**FILED**

JUN 1 3 2014

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

RANDALL GLEN GOODALE, JR., also known as Randall Glen Goodale,

Defendant - Appellant

Appeal from the United States District Court for the
Western District of Texas, San Antonio

Before STEWART, Chief Judge, and BARKSDALE and HIGGINSON, Circuit Judges.

## J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed.

ISSUED AS MANDATE:

A True Copy
Attest

Clerk, U.S. Court of Appeals, Fifth Circuit

By: _____
Deputy

New Orleans, Louisiana

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 12, 2013

No. 11-51204

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

RANDALL GLEN GOODALE, JR., also known as Randall Glen Goodale,

Defendant - Appellant

FILED

JUN **1 3** 2014

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:11-CR-409-1

Before STEWART, Chief Judge, and BARKSDALE and HIGGINSON, Circuit
Judges.

PER CURIAM:[*]

Following a brief bench trial, Randall Glen Goodale, Jr., was convicted of:
executing a scheme either to defraud Wells Fargo Bank or to obtain moneys or
other property under the custody or control of that bank by means of false and
fraudulent representation, in violation of 18 U.S.C. § 1344; and aggravated
identify theft, in violation of 18 U.S.C. § 1028A(a)(1).  Goodale primarily

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4

No. 11-51204

contends: there was insufficient evidence to prove he possessed the intent to defraud Wells Fargo, in violation of § 1344(1), through a scheme that placed it at a risk of financial loss or civil liability.  AFFIRMED.

I.

The underlying facts were stipulated in large part at Goodale's bench trial. At its conclusion, the court verbally rendered its findings of fact and conclusions of law.  Some of those findings of fact follow.

On 15 July 2009, a Wells Fargo checkbook and Texas driver's license, each belonging to David Rumple, were stolen from his vehicle in San Antonio, Texas. Rumple had closed his corresponding checking account, however, in October 2008. Between 15 and 17 July 2009, Goodale used the stolen items to negotiate fraudulently seven checks to La Vernia One Stop, a gasoline station located in La Vernia, Texas.  Goodale used the checks to obtain goods, cash, gasoline, and other things of value, totaling $460.40.

La Vernia One Stop presented five of the seven checks; Wells Fargo returned them on grounds that either the account could not be located or it was closed.  The other two checks were not presented; they had been negotiated by Goodale the day of his arrest.

A 25 May 2011 indictment charged Goodale with:  two counts of "knowingly execut[ing] and attempt[ing] to execute a scheme and artifice to defraud and to obtain the moneys, funds, . . . or other property owned by, or under the custody or control of Wells Fargo Bank, insured by the Federal Deposit Insurance Corporation, by means of false and fraudulent pretenses, representations, and promises", with each count charging violation of 18 U.S.C. § 1344(1) and (2); and one count of "knowingly possess[ing] and us[ing], without lawful authority, a means of identification of another person, to wit: the person's drivers' license number, during and in relation to" the charged bank  fraud, in violation of 18 U.S.C. § 1028A(a)(1).

2

No. 11-51204

At the 29 August 2011 bench trial, Government exhibits and stipulations were admitted, followed by the testimony of two Government witnesses. Rumple testified to, *inter alia*: his checkbook and Texas driver's license being stolen from his vehicle in July 2009; having closed that checking account in October 2008; and not having authorized anyone to use his checking account or driver's license. Janie Valdez, a Wells Fargo market-support consultant, testified concerning the risk of loss or civil liability Wells Fargo is exposed to when checks, legitimate and not legitimate, are presented. Goodale neither testified nor otherwise presented evidence. At the end of trial, pursuant to findings of fact and conclusions of law from the bench, Goodale was convicted on all counts.

Included in the findings of fact was that "[t]he evidence . . . by the Wells Fargo representative [Valdez] establishes that there was a potential risk of loss to the bank by" Goodale's negotiating the checks. In its conclusions of law, the court stated, *inter alia*, that Goodale "was unaware of whether the checking account was closed, not closed, had sufficient funds, had insufficient funds. Nevertheless, his intent was to have the check[s] presented ultimately to a bank for payment and he would receive items in return for that". Noting our court has ruled that "the knowing cashing of bad checks demonstrate[s] an *intent to defraud a bank*, because this behavior expose[s] the bank to a significant risk of financial loss", and because testimony established it was possible the checks would have been paid on a closed account, the court concluded, "beyond a reasonable doubt, that [Goodale] committed the crime of bank fraud in violation of 18 U.S.C. [§] 1344". (Emphasis added.) "[W]ith that finding", the court concluded it was "uncontested that the identity theft occurred".

Goodale was sentenced on 30 November 2011 to, *inter alia*, 39 months' imprisonment.

3

No. 11-51204

## II.

Goodale challenges whether the evidence was sufficient to prove he: possessed the necessary intent to defraud Wells Fargo; and placed the bank at a risk of financial loss or civil liability. The aggravated identify-theft conviction having been predicated on the bank-fraud convictions, Goodale also challenges the former conviction, but only to the extent the latter convictions are vacated.

A district court's findings of fact following a bench trial are reviewed for clear error; its conclusions of law, *de novo*. *E.g.*, *United States v. Wallace*, 389 F.3d 483, 485 (5th Cir. 2004). The clear-error standard is highly deferential, *e.g.*, *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011); if the challenged findings are "plausible in [the] light of the record as a whole", there is no clear error, *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008) (internal quotation marks omitted). Re-stated, a finding of fact is clearly erroneous "only if a review of all the evidence leaves us with the definite and firm conviction that a mistake has been committed". *Rodriguez*, 630 F.3d at 380 (internal quotation marks and citation omitted).

Our review of the district court's finding Goodale guilty at his bench trial is to determine whether the finding is supported by "any substantial evidence". *E.g.*, *United States v. Ceballos-Torres*, 218 F.3d 409, 411 (5th Cir. 2000) (internal quotation marks and citation omitted). "Evidence is sufficient to support a conviction if any rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt." *Id.* In reviewing this bench-trial verdict, "[i]t is not our function to make credibility choices or to pass upon the weight of the evidence". *United States v. Rosas-Fuentes*, 970 F.2d 1379, 1381 (5th Cir. 1992) (citation and alterations omitted). The evidence is examined as a whole and construed in the light most favorable to the Government. *Ceballos-Torres*, 218 F.3d at 411.

4

No. 11-51204

This any-substantial-evidence standard applies despite Goodale's not moving for judgment of acquittal when the Government rested. *See Rosas-Fuentes*, 970 F.2d at 1381; *Hall v. United States*, 286 F.2d 676, 677 (5th Cir. 1960) (no need for formal motion for judgment of acquittal in criminal case tried to court upon defendant's plea of not guilty because that plea "asks the court for judgment of acquittal, and a motion to the same end is not necessary").

## A.

Proscribed by the two subsections of 18 U.S.C. § 1344 are the knowing or attempted execution of "a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises". For § 1344(1), "[t]he requisite intent to defraud is established if the defendant acted knowingly and with the specific intent to deceive, ordinarily for the purpose of causing some financial loss to another or bringing about some financial gain to himself". *United States v. Saks*, 964 F.2d 1514, 1518 (5th Cir. 1992); *accord United States v. Morganfield*, 501 F.3d 453, 464 (5th Cir. 2007) (concerning § 1344(2)).

Each bank-fraud count in Goodale's indictment charged both means of violating the statute, allowing the Government to prove, beyond a reasonable doubt, federal bank fraud under either subsection. In rendering its findings of fact and conclusions of law, however, the district court did not clarify which prong of the statute Goodale had violated.

For example, as noted *supra*, the court discussed in its conclusions of law that Goodale had the requisite intent to defraud Wells Fargo, which concerns the requirements for conviction under § 1344(1). On the other hand, the court also ruled:

No. 11-51204

> Bank fraud under Section 1344 requires that the
> [G]overnment demonstrate the defendant placed the
> financial institution at risk of civil liability or financial
> loss. It is not necessary, however, for the [G]overnment
> to prove that the banks actually suffered civil liability
> or financial loss in order to obtain a bank fraud
> conviction. The evidence presented by the Wells Fargo
> representative establishes that there was a potential
> risk of loss to the bank by these transactions.

In this instance, the court is generally discussing § 1344, without reference to either of its subsections.

It is well established that, in the absence of actual loss, our court requires the Government to prove the bank was subject to a risk of loss or civil liability for a conviction pursuant to 18 U.S.C. § 1344. *E.g.*, *United States v. Lemons*, 941 F.2d 309, 315-16 (5th Cir. 1991). (Some of our sister courts do not read § 1344 to require proof of such risk of loss. For example, see *United States v. Warshak*, 631 F.3d 266, 313 (6th Cir. 2010) (citing *United States v. Everett*, 270 F.3d 989, 991) (6th Cir. 2001) ("[T]o have the specific intent required for bank fraud the defendant need not have put the bank at risk of loss".)) and *United States v. De La Mata*, 266 F.3d 1275, 1298 (11th Cir. 2001) (risk of loss only one means of establishing intent to defraud).)

This risk-of-loss element is present when the Government seeks conviction under either subsection of § 1344. As our court has acknowledged, "the terms 'scheme' and 'artifice' are defined to include, among other things, any fraudulent pretenses or misrepresentations intended to deceive others to obtain something of value, such as money, from the institution to be deceived". *Lemons*, 941 F.2d at 314-15 (quoting *United States v. McClelland*, 868 F.2d 704, 709 (5th Cir. 1989)). In *Lemons*, the jury was instructed on only subsection one of § 1344; yet our court understood that to allow conviction if the jury found defendant sought to fraudulently obtain the bank's property. *Id.* Similarly, in *Morganfield*, while

6

No. 11-51204

purporting to discuss only subsection two of § 1344, our court discussed the need for a "requisite intent *to defraud*"—language that tracks subsection one. 501 F.3d at 464 (emphasis added).

Moreover, our court has referred to risk of loss as an element of § 1344, without reference to either subsection. *Id.* at 465-66. As noted, it has also acknowledged that risk of loss applies to both subsections. *Id.* at 467 n.53 (discussing risk of loss in context of subsection two, while citing opinion finding sufficient risk of loss under subsection one). Accordingly, absent actual loss, the Government must prove a risk of loss or civil liability to the financial institution under either subsection of § 1344.

In convicting Goodale of bank fraud, the district court relied primarily on our recent decision in *Morganfield*. There, Morganfield and others engaged in a scheme using false personal identifications to open checking accounts in the names of nonexistent businesses; they wrote checks on those accounts to nonexistent persons, knowing the accounts had insufficient funds to cover the checks; and they used the false identifications to cash the checks at grocery and convenience stores. 501 F.3d at 456-57. Morganfield was convicted for, *inter alia*, two counts of bank fraud under § 1344(2). *Id.* at 456. Like Goodale, Morganfield's challenge included insufficient evidence of: specific intent to defraud; "and that any financial institution faced a risk of loss or civil liability". *Id.* at 457.

Concerning Morganfield's specific-intent challenge, our court held the bank need not "be the central target of the alleged scheme for there to be bank fraud liability. Rather, in such cases where the drawer has simply overdrawn the account, the [G]overnment must present other facts evincing an intent to victimize the financial institution". *Id.* at 465 (internal quotation marks omitted). Because the scheme was "not a simple insufficient check funds

7

No. 11-51204

scheme", the "other facts evincing an intent to victimize the financial institution", *id.*, were sufficient for a jury to rationally infer intent, *id.* at 461.

Concerning Morganfield's risk-of-loss challenge, where, based on witness testimony, it is possible a bank may honor a check when the account has insufficient funds on the assumption the customer will later deposit funds to cover the difference, our court held such a "possibility creates a sufficient risk of loss to the financial institution" to support a bank-fraud conviction under 18 U.S.C. § 1344. *Id.* at 466-67. That was premised on our court's holding "the [G]overnment need *not prove a substantial likelihood of risk of loss* to support the convictions". *Id.* at 465-66 (quotation marks omitted) (emphasis added).

Goodale claims the district court's findings of fact regarding risk of loss are clearly erroneous. As *Morganfield* states, however, there need not be actual loss or liability by the bank, or even a *substantial risk* of loss or liability, to support a bank-fraud conviction. Valdez testified to the presence of a risk of loss or civil liability, through human or computer error, when a check, legitimate or not, is presented to the bank. For example, her cross-examination testimony provides in part:

> [Goodale's counsel]: In [the Government's] questioning, [it] asked you about risk of loss to the bank or civil liability. On an account that had already been closed, in this case, by Mr. Rumple, if somehow through a computer glitch or human error or whatever that check was paid, that would not create any liability from the bank to Mr. Rumple, would it?
>
> [Valdez]: If it was paid, would there be a liability to Mr. Rumple? I don't know what that liability might be, without a whole bunch of extra research involved.
>
> [Goodale's counsel]: Let me ask you this. If it was paid, it wouldn't be paid out of Mr. Rumple's account, because he doesn't have one anymore, correct?
>
> [Valdez]: Correct.

8

No. 11-51204

> [Goodale's counsel]: *So it would have to come out of the bank's ledger?*
>
> [Valdez]: *Correct.*

(Emphasis added.)   In short, the court's risk-of-loss finding was not clearly erroneous.

In addition to *Morganfield*, persuasive authority is provided by *United States v. Brandon*, 298 F.3d 307 (4th Cir. 2002), which has a factual scenario substantially similar to Goodale's.   Brandon was charged with federal bank fraud for engaging in a scheme to defraud several federally-insured banks by stealing blank checks from six individuals, procuring picture identifications bearing each account holder's name, forging the account holders' signatures, and negotiating the checks to purchase items from merchants in Maryland and Virginia. *Id.* at 309.   After pleading guilty to six counts of bank fraud, Brandon challenged on appeal the denial of her motion to dismiss the indictment, contending the facts alleged, even if true, were insufficient for bank fraud under 18 U.S.C. § 1344. *Id.* at 309-10.

Brandon's challenge to the indictment presented a contention analogous to Goodale's: that the facts did not support federal bank fraud because the scheme involved negotiating stolen checks to merchants, not presenting them directly to banks; therefore, the fraud victims were the retail merchants, not the banks. *Id.* at 310.   In affirming the denial of Brandon's motion to dismiss the indictment, the Fourth Circuit found the facts presented in the indictment "clearly inform" that Brandon's conduct, if proven, would constitute a scheme to defraud; where she negotiated "forged instruments to merchants who exchanged goods for the funds held by the drawee bank[,] . . . an inevitable part of [that] process is the eventual presentation of the stolen and forged checks to the drawee banks, which exposes the banks to a potential risk of loss". *Id.* at 312.

9

The Fourth Circuit in *Brandon* cited favorably to a Second Circuit opinion which reached the same conclusion in a larger-scale bank-fraud scheme. The Fourth Circuit opined: "The jury could infer that inherent in [defendant's] transactions with [the merchant] was the risk that the forged checks would be presented to a bank for payment. . . . [Defendant] is not relieved of criminal liability for bank fraud because his primary victim was [not a bank]". *Id.* (quoting *United States v. Crisci*, 273 F.3d 235, 240 (2d Cir. 2001)).

An important distinction in *Brandon* and *Crisci* is the legitimacy of the accounts. The accounts in those cases were not closed. Accordingly, Goodale contends that Rumple's account being closed "eliminated any cognizable risk of loss" to Wells Fargo from Goodale's conduct. As discussed above, however, at the bench trial, the Government elicited testimony from Wells Fargo market-support consultant Valdez that human and computer error, albeit inherent in the presentation of legitimate checks as well as illegitimate checks, exposed Wells Fargo to possible risk of loss, even where checks were drawn on a closed account. The court relied in part on this testimony to convict Goodale. As also discussed, the Government "need not prove a substantial likelihood of risk of loss to support [bank fraud] convictions". *Morganfield*, 501 F.3d at 465-66. (Goodale's challenging lack of intent due to Rumple's account's being closed is inconsistent with the evidence: Goodale did not know the account was closed. At the bench trial, his counsel agreed in closing argument that Goodale was unaware of the account's status in that regard. As Goodale's counsel conceded at oral argument here, this constituted an admission.)

*Brandon* held "the presentation of a forged or altered instrument is evidence, *in and of itself*, of an intent to defraud a bank". *Brandon*, 298 F.3d at 313 (emphasis added) (citing *United States v. Laljie*, 184 F.3d 180, 190-91 (2d Cir. 1999)). Our court has cited approvingly to this holding. *See Morganfield*, 501 F.3d at 465 n.48. Goodale's negotiating forged checks to La Vernia One

No. 11-51204

Stop, in and of itself, established his intent to defraud Wells Fargo, sufficient to uphold his § 1344 bank-fraud conviction.

## B.

Goodale's aggravated identify-theft conviction was under 18 U.S.C. § 1028A(a)(1), which prohibits, *inter alia*, the knowing use of another person's identification, without lawful authority, during and in relation to the commission of federal bank fraud. Goodale concedes that, if we hold sufficient evidence supports his bank-fraud convictions, that compels our upholding the identity-theft conviction as well. Accordingly, because we uphold the former convictions, the latter conviction is also upheld.

## III.

For the foregoing reasons, the judgment is AFFIRMED.